UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | |
|---|---|
| **WINONA POWER COATING, INC.,**<br>    **Plaintiff,**<br><br>V.<br><br>**TRINSOFT, LLC,**<br>    **Defendant.** | CIVIL NO. 5:25-cv-162-KKC<br><br><br>**OPINION AND ORDER** |

*** *** ***

This matter is before the Court on defendant TrinSoft, LLC's motion for partial dismissal (R. 23.) With this motion, TrinSoft asks the Court to dismiss plaintiff Winona Power Coating, Inc.'s fraud claim against it.

Winona alleges that TrinSoft failed to fulfill the promises it made in a contract by which TrinSoft agreed to provide certain software to Winona. As it must on a motion to dismiss, the Court has assumed the truth of the factual allegations made in Winona's complaint (R. 5), the relevant ones of which are set forth in this opinion.

TrinSoft provides software that is designed to allow businesses to manage accounting, inventory, operations, distribution, and other functions. Winona provides coating and finishing services to customers. On January 6, 2023, the two parties entered into a contract by which Winona agreed to pay TrinSoft $55,300 for a software package. TrinSoft originally set the "go live" date for the software for July 1, 2023. TrinSoft was, however, unable to go live by that date. Accordingly, the go-live date was postponed.

Winona alleges that, in October and November 2023, TrinSoft representatives made false representations about the software package, including that it was ready to go live and the functions that it would be able to do.

By December 8, 2023, the software package had gone live. About a month later, TrinSoft advised Winona that the software was not properly functioning because TrinSoft had customized it to Winona's needs. Winona agreed to pay TrinSoft an additional $50,000 to reverse the customization and return the software to its original form. Winona alleges that the software still did not properly function. Accordingly, Winona was forced to return to its prior software vendor and operating system. The prior software vendor charged Winona an "upcharge" of $27,000 per year more than Winona had previously paid it.

Winona asserts claims for breach of contract and fraud against TrinSoft, which now moves to dismiss the fraud claim. TrinSoft argues that the fraud claim is barred by Kentucky's economic loss doctrine. It also argues that Winona has failed to sufficiently plead a fraud claim.

"The 'economic loss rule' prevents the commercial purchaser of a product from suing in tort to recover for economic losses arising from the malfunction of the product itself, recognizing that such damages must be recovered, if at all, pursuant to contract law." *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 733 (Ky. 2011). The "rule recognizes that economic losses, in essence, deprive the purchaser of the benefit of his bargain and that such losses are best addressed by the parties' contract and relevant provisions of Article 2 of the Uniform Commercial Code." *Id*. at 738. "Thus, costs for repair or replacement of the product itself, lost profits and similar economic losses . . . are recoverable only under the parties' contract, including any express or implied warranties." *Id*.

2

Unless the purchaser can demonstrate harm "above and beyond" the breached contract, it can recover only under a breach of contract claim. *Nami Res. Co., L.L.C. v. Asher Land & Min., Ltd.*, 554 S.W.3d 323, 335 (Ky. 2018) (citation omitted). The rule bars fraud claims where the damages the plaintiff claims are the same economic losses arising from the breached contract. *Id.* at 336.

"However, a party who has been aggrieved by fraudulent or malicious conduct which results in damages that differ from the damages sustained by reason of the breach of contract, may assert an independent claim for such fraudulent or malicious conduct seeking whatever damages are appropriate for the independent claim, including punitive damages if otherwise authorized by law." *Id.* For such a claim, the plaintiff must allege a breach of a duty that arises independently of any contract duties. *Id.*

Thus, Winona can assert both fraud and breach of contract claims only if the alleged fraud resulted in damages that are different than those caused by the alleged breach of contract. *New London Tobacco Mkt., Inc. v. Kentucky Fuel Corp.*, 44 F.4th 393, 414 (6th Cir. 2022) (citing *Nami*, 554 S.W.3d at 336.)

Here, Winona's complaint does not explicitly state what damages it seeks to recover. It mentions, however, the $55,300 it initially paid TrinSoft (R. 5 Complaint ¶ 5), an additional $ 30,000 it paid TrinSoft to "reverse" the software customization (*id.* at ¶¶ 13-14), and the "upcharge" it was required to pay its prior software vendor after learning that the TrinSoft software did not properly function (*id.* at ¶ 14). These are all economic losses allegedly caused by TrinSoft's failure to provide functioning software as it promised in the contract.

Winona argues its fraud claim is based on a separate duty than the contractual duty—the duty of honesty. The same could be said of every fraud claim. No court has held,

3

however, that every fraud claim survives the economic loss. Courts have applied the economic loss rule to bar fraud claims where "the damages plaintiffs seek are the same economic losses arising from the alleged breach of contract," *New London,* 44 F. 4th at 413-14 (quoting *Nami*, 554 S.W.3d at 335), and where the conduct that supports the fraud claim is "indistinguishable" from the conduct supporting the breach of contract claim. *Id*. (quoting *Nami*, 554 S.W.3d at 336).

Here, on both the breach of contract and fraud claims, Winona seeks to recover the economic losses caused by the alleged breach of conduct.

As to the conduct underlying both claims, Winona argues that TrinSoft breached the duty of honesty by making representations in October and November 2023—after the signing of the contract—that: 1) the software was then functional and ready to go live; and 2) that the software could then complete customer invoices, account for inventory, provide a cost per operation, and prepare accurate financial statements. (R. 5 Complaint ¶ 10.) These are the same promises that Winona alleges are contained in the contract: the promise that the software would go live and the promise that the software would be able to perform certain functions. The conduct that supports the fraud claim is indistinguishable from the conduct supporting the breach of contract claim. The factual bases for the two claims are essentially identical.

Winona argues that the contract limits its damages to the amounts it paid TrinSoft and so, without the fraud claim, it cannot recover the upcharge it was forced to pay its prior vendor after the TrinSoft software did not perform as promised. But this is one of the outcomes the economic loss rule is designed to prevent: a party recovering damages in tort that the parties did not include in their agreement for conduct that is governed by the agreement. The rule is intended to "protects parties' freedom to allocate economic risk by contract" and "it encourages the party best situated to assess the risk of economic loss,

4

usually the purchaser, to assume, allocate, or insure against that risk." *Giddings*, 348 S.W.3d at 739; *Chapman v. Tristar Prods., Inc.*, No. 1:16-CV-1114, 2017 WL 1433259, at *10 (N.D. Ohio Apr. 24, 2017) ("The rule prevents plaintiffs from using tort law to make an end-run around bargained contracts.")

The parties allocated their risks when they entered into the contract, including the damages that Winona could recover if TrinSoft breached its contractual duties. With its fraud claim, Winona seeks to recover damages that it asserts are beyond what the parties agreed to for conduct that is governed by the contract. Permitting it to do so would allow Winona to make an end run around the parties' agreement.

For all these reasons, the Court hereby ORDERS as follows:

1) TrinSoft's motion (R. 23) for dismissal of the fraud claim against it is GRANTED; and

2) Winona's fraud claim is DISMISSED.

********

This 12th day of March, 2026.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge